BONNEY v. The HUNTRESS. See Cases Nos. 6,912–6,914.

BONTZ (GRANT v.). See Case No. 5,694.

BONTZ (GREGG v.). See Case No. 5,798.

BONTZ (PIPSICO v.). See Case No. 11,183.

BOODY (FISHER v.). See Case No. 4,814.

---

## Case No. 1,635.

### BOODY et al. v. RUTLAND & B. R. CO.

[3 Blatchf. 25;[1] 24 Vt. 660.]

Circuit Court, D. Vermont. May, 1853.

CONTRACTS—PERFORMANCE—CONSTRUCTION.

1. Where B. contracted with a railroad company, in writing, to build certain bridges on its road, at a certain sum per foot, to be paid, one-fourth in cash, and three-fourths in the stock of the road at par value, and the contract was entirely silent as to the time or place of payment: *Held* that, looking to the contract alone, B. could not call for payment, either of the cash or stock, until a complete performance of the contract on his part, or, at any rate before, or oftener than a bridge was fully completed. Nor could he then sue and recover for the stock without proof of a special request and of a refusal to deliver it. For, if no time be fixed in the contract, or by other agreement of the parties, either express or implied, for the doing of the thing, a request is essential to the cause of action.

2. The company, after the commencement of a suit by B. on the contract, having mortgaged its road, to secure the payment of debts due from it to third persons: Held, that the act of mortgaging the road would not work or amount to a disability to perform the contract, or make the defendants liable to pay money in lieu of the stock.

3. Where it appeared that it was the custom of the company to make monthly payments to B. and its other contractors, for work done on its road, upon estimates made by the engineer at the end of each month: Held, that this must be considered the rule of payment under the contract, established by mutual consent, and binding upon the parties, so as to make a special request for the stock unnecessary.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

4. Held, also, that, under the circumstances of this case, no tender or offer of the stock having been made by the company, B. was entitled to recover its value.

5. After the making of the original contract, B. proposed to put in iron bearings, instead of wood, for so much per foot of the bridges, varying, like the prices in the original contract, according to the different spans in the bridges, "in addition," as B. said, "to the former proposal;" but nothing was said as to the manner of paying the additional expense: Held, that it might be well inferred, that the mode of paying for the iron bearings was to be the same as that provided for building the bridges.

[At law. Action of account by Azariah Boody and Andrew B. Stone against the Rutland & Burlington Railroad Company. Judgment for plaintiffs.]

Jonathan D. Bradley, for plaintiffs.

Charles Linsley and D. A. Smalley, for defendants.

Before NELSON, Circuit Justice, and PRENTISS, District Judge.

PRENTISS, District Judge. This is an action of account to recover the balance of book accounts between the parties, a form of action given by statute in this state for such purpose, and long in use here. After judgment to account was confessed by the defendants, and duly entered up, the action, by agreement of the parties, and order of court founded thereon, was submitted to the determination of referees. The referees have made and returned into court a report, awarding to the plaintiffs the sum of $13,699.19, as being due to them from the defendants to balance the accounts between them, and stating specially the facts and grounds upon which the award was made. Both parties have filed exceptions to the report, objecting to certain allowances made by the referees, and insisting that the report should be modified and corrected in those particulars and judgment be rendered upon it accordingly.

The dealings between the parties, forming the subject of the action, originated in the undertaking of the plaintiffs to build for the defendants, and in their actually building for them, all the railroad bridges in the Rutland and Bellows Falls division of their road. The original contract, consisting simply of a written proposition, made by the plaintiffs in a letter, in August, 1847, and accepted by the defendants in the same month, is very short and somewhat meagre, embracing but few details or particulars. After stating the general plan or model of the bridges, it merely regulates the rate and mode of compensation, without specifying the time or place of payment; that is, it only gives the prices of constructing the bridges per foot, varying according to their different spans, to be paid one-fourth in cash, and three-fourths in the stock of the road at par value..

For the unpaid balance due and payable under the contract in cash, according to the stipulated prices, including the work conced-ed to be extra, which was, of course, payable in money, it is not denied by the defendants that the plaintiffs are entitled to recover. The only questions presented by their exceptions are: Have the plaintiffs a right, on the facts stated in the report, to recover the value of the stock agreed to be paid? And, if so, should the rule of estimate be its value in February, 1850, as allowed by the referees, which was sixty per cent. of its par value, or its value at the time of commencing the action, which was only fifty per cent.?

The written contract, as we have already seen, is entirely silent as to the time or place of payment; and, looking to that alone, the plaintiffs could not call for payment, either of the cash or stock, until a complete performance of the contract on their part, or, at any rate, before, or oftener than, a bridge was fully completed. Nor could they then sue and recover for the stock, without proof of a special request and of a refusal to deliver it. It is an undeniable rule of law, that where a promise is made to do a collateral thing on request, the request is parcel of the contract, and no right of action arises until a request be made. So, if no time be fixed in the contract, or by other agreement of the parties, either express or implied, for the doing of the thing, a request is essential to the cause of action. Here, no direct, formal request having been made by the plaintiffs for the stock, the question is, whether, on the facts found and stated by the referees, a time was fixed for the payment of the stock, so as to make a special request or demand unnecessary, or whether the facts otherwise supersede or dispense with the necessity for such demand or request.

If the fact of the defendants' having, since the commencement of the suit, mortgaged their road, to secure the payment of debts due from them to third persons, and thereby put it out of their power to give to the plaintiffs unincumbered stock, could be considered as disabling the defendants from performing their contract, it would no doubt render a request for the stock unnecessary, and a recovery could be had for it here, since the law allows a recovery, in this form of action, for items of account accruing or becoming due after the commencement of the action, as well as for those which had accrued or become due before. But we think that the act of mortgaging the road would not work or amount to a disability to perform the contract. The debts were really as much a charge upon the road, or incumbrance upon the stock, before as after the mortgage. The mortgage, it is true, might have the effect to depreciate the stock in the market, and render it less valuable to the holder; but every purchaser of or contractor for stock knows that he must take and hold it subject to all charges incident to the completion and use of the road, and the accomplishment of other legitimate objects of the

corporation. We cannot, therefore, say that, by the act of mortgaging the road for the purpose mentioned, the duty of the defendants to pay stock was converted into an obligation or liability to pay money in lieu of the stock. The right of the plaintiffs to recover for the stock, if any such right exists, must rest, then, upon other facts reported in the case.

The time of payment, there being no stipulation in the written contract on the subject, may, unquestionably, be inferred from other evidence—such as the usage of the company in paying their contractors, the acts of the parties, or the course adopted and pursued by them under the contract. Such evidence does not contradict any of the terms of the contract, but is mere suppletory matter, showing the understanding and intention of the parties, or rather the practical construction put by them upon the contract. Now, it is expressly stated in the report, that it was the custom of the defendants to make monthly payments to their contractors, for work done on their road, upon estimates made by the engineer at the end of each month; and that this practice was adopted with the plaintiffs. It thus appearing to have been the usage of the company to pay monthly on the estimates, and that usage having been adopted in reference to the plaintiffs, the referees might well consider it as the rule of payment under the contract, established by mutual consent and binding upon the parties.

The report says nothing as to the place of payment. If the place, as well as the time of payment, had been fixed, it would be sufficient for the defendants to show that they were ready at the time and place to make payment. But, if no place was fixed, it would be the duty of the defendants, at or within the time, to tender or offer the stock to the plaintiffs. If the payments were not made monthly in full, by reason of the estimates not being made in full, as appears to have been the case, the fault would seem to be on the part of the defendants, the estimates being made by an officer in their employment and acting under their control. It was owing to the estimates not being made in full, as is stated to have often happened in practice, that there was so large an unpaid balance due to the plaintiffs in cash and stock, on the completion of their contract in December, 1849. After that, I suppose, no estimates were necessary. The plaintiffs soon called for money on account of the contract, but the defendants declined paying any until there had been an examination of the accounts. For the purpose of such examination, and with the view of making a final adjustment of the plaintiffs' claims, the parties met in February following; but no settlement was effected, as they could not agree on the amount due, or on the mode of payment of some of the items in the account, the plaintiffs claiming that the extra work and iron bearings should be paid for wholly in cash, and the defendants claiming that all extra work connected with the bridges, and also the iron bearings, should be paid for in stock and cash, as under the contract, and refusing to settle upon any other terms. On these and other facts stated, the defendants having made no tender or offer of stock, the referees found that the plaintiffs were entitled to recover the value of the stock; and, they having so found, we are not disposed, under the circumstances of the case, admitting the point to be not entirely free from doubt, to disturb the award on that account. It follows, of course, that, if the plaintiffs had a right of action at law in February, 1850, to recover for the stock, it should be estimated according to its value at that time.

The other question in the case arises out of the exceptions filed by the plaintiffs, and relates to their claim for the iron bearings. The question is, whether this claim falls within the terms of the original contract, to be paid in the manner therein stipulated—one-fourth in cash and three-fourths in stock; or whether it should be treated in the nature of a claim for extra work, to be paid, of course, wholly in cash. The referees considered it as subject, in that respect, to the terms of the original contract, and have allowed the claim and stated the account according to the mode of payment therein prescribed; and we think they were justified in so doing.

Where the parties deviate from the original plan agreed upon, and the terms of the original contract do not appear to be applicable to the new work, it being beyond what was originally contemplated by the parties, it is undoubtedly to be regarded and treated as work wholly extra and out of the scope of the contract, and may be recovered for as such. But it is otherwise, if the original terms be not inapplicable, and there be evidence from which it may be inferred that it was the intention of the parties that the new work should be subject to those terms. Here, the original agreement contains particular stipulations as to the mode of payment for building the bridges, and the subsequent agreement, under which iron bearings were substituted for the wooden bearings contemplated in the original plan, is wholly silent as to the manner of paying the additional expense they would occasion. From that circumstance, taken in connection with the expressions employed in the latter agreement, it might be well inferred that the mode of paying for the iron bearings was to be the same as that provided for building the bridges. The plaintiffs propose to put in iron bearings instead of wood, for so much per foot of the bridges, varying, like the prices in the original contract, according to the different spans in the bridges, "in addition," as they say, "to the former proposal" —thus referring to the original contract. The

intention and effect of the second agreement would seem to be simply to vary the original plan, so far as to substitute iron bearings for wood, and to make a corresponding alteration of the original stipulated prices, by adding thereto so much per foot as would cover the additional cost, leaving the mode of payment unchanged. It was not intended as a separate, independent contract, but merely as supplemental or additional to the other; and, no doubt, in pleading, a declaration stating the original contract and the agreement altering its terms in the particulars mentioned, would be good in law.

Such being the views we take of the points raised in the case, the consequence is, that the exceptions of both parties must be overruled, and judgment be rendered on the report for the sum awarded to the plaintiffs, with interest thereon from the time of filing the report.